UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON CARL SUTTER,<br><br>Petitioner,<br><br>v.<br><br>J. GASTELO, Warden,<br><br>Respondent. | No. 1:19-cv-01091-DAD-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[THIRTY DAY OBJECTION DEADLINE]** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is currently serving a life sentence for his conviction of attempted murder with a firearm. He has filed the instant habeas action challenging the conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

**I.     PROCEDURAL HISTORY**

On December 18, 2017, in Fresno County Superior Court, a jury found Petitioner guilty of first degree attempted murder (Cal. Penal Code §§ 664/187(a)), possession of a firearm by a felon (Cal. Penal Code § 29800(a)(1)), and attendant enhancements (Cal. Penal Code §§ 12022.53(d); 12022.5(a); 12022.7(a)). People v. Sutter, 2019 WL 1091755, at *1 (Cal.Ct.App. 2019). On January 18, 2018, Petitioner was sentenced to an indeterminate term of 25 years to life followed

by one consecutive indeterminate term of life with the possibility of parole. (Doc. 17-12 at 27.[1])

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). Counsel for Petitioner notified the appellate court that there were no arguable issues pursuant to People v. Wende, 25 Cal.3d 436 (1979), thereby invoking a procedure requiring the appellate court to determine if arguable issues existed. Sutter, 2019 WL 1091755, * 1. Petitioner then filed a first and second supplemental brief identifying certain issues. Id. On March 8, 2019, the Fifth DCA affirmed the judgment in a reasoned decision. Id. Petitioner then filed a petition for review in the California Supreme Court. (Doc. 17-5.) The petition was denied on June 12, 2019. (Doc. 17-6.)

On August 12, 2019, Petitioner filed the instant petition for writ of habeas corpus in this Court. (Doc. 1.) On December 3, 2019, Respondent filed an answer to the petition. (Doc. 16.) Petitioner has not filed a traverse.

## II.  FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

> Around June 2016, Francisco Martinez's mother allowed Sutter, whom Martinez had known for at least two years, to move into a house she owned on Mayfair Drive in Fresno. Although Sutter was supposed to keep other people out of the house and maintain it, he "thrashed" it and he allowed people to come and go all the time. Sometime after December 2016, Martinez began telling Sutter he had to move, but Sutter did not move.
>
> On the evening of August 14, 2017, Martinez received a text from Sutter stating that he wanted to get some boxes and he wanted Martinez to go to the Mayfair Drive house. Martinez, however, did not go to the house until the next morning at approximately 7:00 a.m. Martinez knocked on the door, but nobody answered. He then went to the window of the room where Sutter stayed and knocked on the window. Eventually someone inside told Martinez to go to the front of the house. Martinez went to the front door and pulled on it, but it did not open. The door then opened, and Sutter pointed the barrel of a homemade shotgun at Martinez's face and ordered him to shut up, get in the house, and sit down. [Fn.2] Martinez turned around and was about to step off the porch when he heard a gunshot that struck him on the back and he fell to the ground. Sutter came out of the house with his father and he began saying Martinez had threatened his family, that he should stomp Martinez, and that it was a good thing he did not kill him. Although Martinez's legs were paralyzed he managed to turn himself over and he pleaded with Sutter not to kill

---

[1] Docket citations are to ECF pagination.

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will adopt the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

him. However, at that point, Sutter no longer had the shotgun. When Martinez stated, "God, don't let me die," Sutter told him there was no God and that after he let Martinez bleed to death, Sutter was going to kill Martinez's mother if she did not sign the house over to him. Despite his injuries, Martinez was able to call 911 on his cell phone.

> [Fn.2] Approximately a month earlier, Martinez had gone to the house and told Sutter he had to move and if he did not, Martinez was going to get the police involved. Sutter got upset and "pulled" a gun on Martinez.

Diana Perez heard the gunshot and called 911. She also saw a bald man walk into the yard and look at something on the ground that was not visible to her because her vision was partially obstructed, and a second man carry away a black backpack.

Fresno County Sheriff's Deputy Manuel Chavez responded to the scene at approximately 7:15 a.m. As Chavez and two other deputies approached the house, he saw Martinez lying on the ground and Sutter start running away from the deputies. Sutter complied with the deputies' commands to get on the ground and they handcuffed him.

During a warrant search of the house on Mayfair Drive, the deputies found a black backpack in a refrigerator. The backpack contained a homemade shotgun that was made from two metal tubes and that contained an expended shotgun shell in one end and a live round in the shotgun's vertical grip. Three to four additional live shotgun rounds were found in a nylon bag that was inside the backpack.

The shotgun blast severed Martinez's spinal cord, leaving him paralyzed from the chest down. He also suffered internal bleeding in his chest cavity and into one of his lungs.

Sutter, 2019 WL 1091755, at *1-2.

## III. DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases

3

filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

4

facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." <u>Jeffries</u>, 114 F.3d at 1500; see <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert. denied*, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 979, 803 (1991); <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); see also <u>Fry v. Pliler</u>, 551 U.S. 112, 119-120 (2007) (holding that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

### C. Review of Petition

The petition presents the following claims for relief: 1) The evidence was insufficient to support the conviction; and 2) Trial counsel rendered ineffective assistance in several instances.

#### 1. Insufficiency of the Evidence

Petitioner first claims there was insufficient evidence to support the finding that he was the shooter because (1) a witness (the victim) lacked credibility due to his admitted ingestion of methamphetamine on the day of the shooting, and (2) the prosecution presented no physical evidence or admissions by Petitioner connecting him to the shooting. (Docs. 1 at 3; 17-5 at 18-21.) Petitioner raised this claim on direct review in the state courts. In the last reasoned decision, the appellate court denied the claim as follows:

> Sutter contends the evidence is insufficient to sustain his conviction because: (1) at trial, Martinez was the only person who implicated him in the shooting and his testimony was not credible for several reasons, including that he was "high" on methamphetamine the day of the shooting; and (2) the prosecution did not present any physical evidence or admissions by Sutter that connected him to the shooting.

5

> [….] There is no merit to these contentions.
>
> The test of sufficiency of the evidence is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is disclosed such that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Substantial evidence is that evidence which is "reasonable, credible, and of solid value." (*Ibid*.) An appellate court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal.3d 421, 425.) "The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296.)
>
> The prosecution's case was based primarily on Martinez's testimony that Sutter shot him when he turned his back to him. Since Martinez's testimony was neither physically impossible or inherently improbable, we reject Sutter's insufficiency of evidence claim.

(Doc. 17-1 at 4-5.)

### a. Legal Standard

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the

correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

      *b. Analysis*

In rejecting the claim, the state court applied the Jackson standard. Therefore, the only question before the Court is whether that application was unreasonable. Upon a review of the record, the Court does not find the state court's determination to be unreasonable.

The victim testified that Petitioner was the shooter. Under California law, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." People v. Scott, 21 Cal.3d 284, 296 (1978). Petitioner claims the witness's testimony was not credible because of his ingestion of methamphetamines on the day of the shooting. This contention was rejected by the jury. It is not the province of a habeas court "to reweigh the evidence and view it in the light most favorable to the defense." Jackson, 443 U.S. at 319. Petitioner has failed to demonstrate that no fairminded jurist would agree with the state court's conclusion that the victim's testimony was not physically impossible or inherently improbable. The claim should be denied.

    2. <u>Ineffective Assistance of Counsel</u>

In his next claim, Petitioner alleges that defense counsel rendered ineffective assistance in the following ways: 1) failing to compel the testimony of Don Sutter; 2) failing to compel Florencia Hernandez's testimony; 3) calling Lawrence Calonge as a witness; and 4) failing to

1 | present mitigating evidence at sentencing. (Docs. 1 at 4; 17-5 at 21-34.) Petitioner raised this claim, fully briefed, for the first time in the California Supreme Court in his petition for review. (Doc. 17-5 at 21-34.) The petition was summarily denied. (Doc. 17-6.) In a case where the state court decided the petitioner's claims on the merits, but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

*a. Legal Standard*

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed at trial. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance.

Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

### b. Analysis – Don Sutter

Petitioner contends that defense counsel rendered ineffective assistance by failing to compel the testimony of Petitioner's father, Don Sutter. He claims that Don Sutter could have provided testimony exonerating Petitioner. He asserts that Don Sutter could have testified that he was the actual shooter, not Petitioner.

To demonstrate prejudice resulting from defense counsel's failure to call a witness, Petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009). Here, Petitioner fails to show that Don Sutter was available to testify and would have done so. It is highly unlikely that Don Sutter would have provided testimony implicating himself, and he could not be compelled to do so in accordance with the Fifth Amendment. In addition, Petitioner merely speculates that Don Sutter's testimony would have been helpful to his defense. Thus, Petitioner makes no showing that the outcome would have been any different had defense counsel called Don Sutter to testify.

### c. Analysis – Florencia Hernandez

Next, Petitioner claims counsel erred in failing to call Florencia Hernandez to testify. He

alleges that Hernandez could have provided testimony exonerating Petitioner. He notes that Hernandez was present at the scene but could not identify the shooter. He claims that had she been called, she could have established that Petitioner was not the shooter and possibly established her own guilt as the shooter.

At the preliminary hearing, a law enforcement officer testified that he spoke to Hernandez at the scene of the shooting. (Doc. 17-7 at 60.) Hernandez told the officer she was home when the incident happened. (Doc. 17-7 at 61.) She stated that she had heard a loud boom, but did not witness the shooting. (Doc. 17-7 at 61-62.) She admitted having smoked methamphetamine the night before or early that morning. (Doc. 17-7 at 62.)

Hernandez was also called and testified at the preliminary hearing. (Doc. 17-7 at 70.) She admitted that Petitioner was her boyfriend and that they were living together. (Doc. 17-7 at 71.) She recalled seeing the victim in the early morning of the day of the incident. (Doc. 17-7 at 72.) She stated that the victim was banging loudly on their bedroom window demanding that they open the door. (Doc. 17-7 at 72-73.) She then got up and opened the door for the victim. (Doc. 17-7 at 74.) The victim entered the house and then stepped back outside. (Doc. 17-7 at 74.) She testified that Petitioner woke up; however, she stated she did not know who shot the victim. (Doc. 17-7 at 73-80.) She stated that she went inside to the restroom, and while she was inside the house in the living room, she heard a loud boom. (Doc. 17-7 at 79-80, 83.) When she went back outside, she saw the victim on the ground asking for help, so she called 9-1-1. (Doc. 17-7 at 79-81.) She did not know where Petitioner was during the incident. (Doc. 17-7 at 82-86.)

At trial, defense counsel stated that his understanding was that Hernandez was unavailable to testify. (Doc. 17-9 at 127.) The prosecutor stated that they had attempted to subpoena her, but they were unable to locate her. (Doc. 17-9 at 606.)

From the record, it is clear that Petitioner cannot show that counsel erred or that Petitioner suffered any prejudice resulting from counsel's failure to call Hernandez. First, she was unavailable to testify at trial. Second, she had nothing helpful to offer the defense, as she had previously testified that she did not witness the shooting.

### d. *Analysis – Lawrence Calonge*

Next, Petitioner alleges defense counsel erred by calling Lawrence Calonge as a witness. Petitioner claims that Calonge's testimony was damaging to the defense, and had defense counsel not called Calonge, Petitioner stood a reasonable chance of being acquitted.

Lawrence Calonge lived about two houses down from the residence where the incident occurred. (Doc. 17-10 at 201.) On the morning of the incident, he had been sitting on his porch reading a newspaper when he heard a gun go off. (Doc. 17-10 at 201.) He looked to where the shot had come from and saw a man standing at the entrance of the house and the victim lying on the ground a couple feet from the stairway. (Doc. 17-10 at 202.) Calonge then saw two more males and a female exit the house. (Doc. 17-10 at 203.) Calonge testified that he witnessed the first male holding a gun and using a lot of profanity. (Doc. 17-10 at 204.) A few minutes later, the same individual came down the stairway and put his hands over the victim in prayer. (Doc. 17-10 at 204.)

Defense counsel then called chief defense investigator, Jeff Gunn. (Doc. 17-10 at 205.) Gunn testified that he reviewed the statements Calonge had given the investigating officers. (Doc. 17-10 at 208.) Gunn stated he spoke to Calonge by telephone and read him his statement verbatim. (Doc. 17-10 at 208.) Calonge told Gunn that his statement was true and correct. (Doc. 17-10 at 209.) Calonge told Gunn that he had nothing to add, delete, or omit from the statement he read. (Doc. 17-10 at 209.) Gunn testified that Calonge had never stated that anyone had a gun. (Doc. 17-10 at 210.)

At sentencing, the prosecutor noted that "the Calonge testimony was very damaging to defense in that this witness had testified that someone matching the [petitioner's] description came walking out of the house with what he believed to be a firearm." (Doc. 17-12 at 25.) Defense counsel responded that "Calonge had never made that statement before," and he had to put his own investigator on the stand to impeach him. (Doc. 17-12 at 25.) Defense counsel characterized it as an "example of a defense tactical error, although really wasn't one [he] could have anticipated." (Doc. 17-12 at 25.) The trial court then noted for the record that defense counsel "did a fantastic job as far as the Court's concerned regarding his presentation of the

11

case." (Doc. 17-12 at 25.)

Petitioner fails to show that the state court rejection of this claim was unreasonable. As Respondent correctly contends, defense counsel could not have anticipated that Calonge would testify to seeing someone holding a gun. In three prior interviews, Calonge had never stated that he witnessed anyone holding a gun. In addition, counsel's investigator went over Calonge's statement with him by reading it to him verbatim, and Calonge stated that he had nothing to add or change. Defense counsel called Calonge to support the defense theory that someone other than Petitioner committed the shooting. This theory was supported by Calonge's testimony that the male who resembled Petitioner prayed over the victim while another male left the area with the backpack containing the gun. A reasonable factfinder could find that defense counsel's decision to call Calonge as a witness was not unreasonable under the circumstances.

*e. Analysis – Mitigating Evidence*

Finally, Petitioner contends that counsel erred by failing to present mitigating evidence at sentencing to support the argument that Petitioner expressed remorse after the shooting. He claims that counsel could have persuaded the court to strike or dismiss the firearm enhancement.

The claim fails because all evidence of remorse, to wit, Petitioner praying over the victim, calling 9-1-1, begging the victim to stay alive, and refusing to leave the victim, was presented at trial. Petitioner does not point to any new evidence which would have corroborated his claims of remorse; therefore, his claim that counsel failed to present additional mitigating evidence is completely speculative. For the same reason, Petitioner fails to show any prejudice.

In addition, Petitioner was not attempting to express remorse for the shooting during sentencing. As noted by Respondent, Petitioner instead claimed that he was innocent of the shooting. In documents he submitted to the sentencing court, he claimed, "I did not do this. I've been in jail patiently waiting for the Courts to find the truth of this case. Please don't let me rot in prison." (Doc. 17-12 at 10.) When Petitioner addressed the sentencing court, he maintained his innocence stating, "Your Honor, I've been sitting her patiently in this Court and in the jail, you know, hoping the Judge would help me find the person that hurt my friend." (Doc. 17-12 at 11.) He then explained his actions on the morning of the incident, stating, "The only part I had in this

12

case was that I was trying to save my friend's life . . . . I didn't do this crime . . . . I'm not the person who did this crime . . . . I didn't do it." (Doc. 17-12 at 14-15.) Since Petitioner was arguing his innocence and not asking for leniency based on his remorse, any evidence of remorse presented by counsel would have been irrelevant to the sentencing court's determination and adverse to Petitioner's arguments. Counsel's decision to forego presenting an adverse alternative theory was not unreasonable.

## IV. RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __January 13, 2020__              /s/ _Sheila K. Oberto_
                                                                                            UNITED STATES MAGISTRATE JUDGE